FILED

12 SEP 14 PM 4:45

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: xcm  DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITNESS IQ, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>TV PRODUCTS USA, INC., a New York corporation,<br><br>Defendant. | CASE NO. 10cv2584 WMc<br><br>**ORDER: (1) GRANTING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND DENYING DEFENDANT'S REQUEST FOR CONFIDENTIALITY; AND (2) GRANTING PLAINTIFF'S REQUEST TO REOPEN DISCOVERY**<br><br>(ECF No. 41) |

## I. Introduction

Plaintiff Fitness IQ, LLC ("Fitness IQ") requests $10,002.05 in attorneys' fees and costs associated with enforcing the settlement agreement with Defendant TV Products USA, Inc. ("TVP"). TVP requests that the invoices it produced be treated as confidential and used only for purposes of section 3 of the settlement agreement. Additionally, Plaintiff moves the Court to reopen discovery in light of Defendant's alleged continued infringement and for the Court to order TVP to show cause why it should not be held in contempt of court.[1]

After reviewing the parties' briefs and exhibits in support thereof, the Court GRANTS Plaintiff's request for attorneys' fees and DENIES Defendant's request for confidentiality of the

---

[1] Fitness IQ also moved for the Court to order TVP to post a bond. The Court ordered TVP to post a $25,000 bond. (ECF No. 44).

invoices. Furthermore, the Court GRANTS Plaintiff's request to reopen limited discovery.

## II. Fitness IQ's Request for Attorneys' Fees and Costs

### A. Fitness IQ's Request

Fitness IQ requests attorneys' fees and costs under the "exceptional case" standard for patent and trademark cases. *See* 15 U.S.C. § 1117(a); 35 U.S.C. § 285; (Fitness IQ's Request at 4.) Fitness IQ argues this case is exceptional because TVP acted unfairly and/or in bad faith when it delayed payment, misrepresented its knowledge of potential infringers, and failed to provide the required documentation relating to its sales until ordered to do so by the Court. (Fitness IQ's Request at 5.)

Fitness IQ also argues the Court has discretion to grant attorneys' fees to enforce a settlement agreement if it finds the case is exceptional. *Schmidt v. Zazzara*, 544 F.2d 412, 414 (9th Cir. 1976). Fitness IQ contends TVP's revisions during settlement were deliberately crafted to construct loopholes in the settlement agreement and deprive Fitness IQ of its benefits under the settlement agreement. (Fitness IQ's Reply at 3.) Fitness IQ asserts this conduct makes the case exceptional because TVP acted unfairly and in bad faith. (Fitness IQ's Request at 4.) Fitness IQ asserts a defendant's bad faith relating to settlement can elevate a case to exceptional status. *See Research Corp. v. Philter Assoc. Growers, Inc.*, 318 F.Supp. 1405, 1406 (N.D. Ill. 1970); (Fitness IQ's Reply at 4.)

Fitness IQ contends it is the prevailing party in the settlement dispute because the Court ordered TVP to produce invoices and provide Fitness IQ with information regarding potential infringers. (Fitness IQ's Request at 5; *see* ECF No. 31.) Fitness IQ further asserts the Court's order makes it the prevailing party because it succeeded on a significant issue which achieved some of the benefit it sought. (Fitness IQ's Reply at 5.)

### B. TVP's Objection

TVP characterizes this dispute as a mere difference in interpretation of the settlement agreement. (TVP's Objection at 2.) TVP argues 15 U.S.C. § 1117(a) and 35 U.S.C. § 285 do not apply to this contract dispute and Fitness IQ is not entitled to attorneys' fees. (TVP's Objection at 2.) In the alternative, TVP argues, even if 15 U.S.C. § 1117(a) and 35 U.S.C. § 285 apply, this is

not an exceptional case. (TVP's Objection at 2.)

TVP contends this is not an exceptional case because it reasonably interpreted the settlement agreement and Fitness IQ's enforcement efforts were unnecessary. (TVP's Objection at 3-6.) TVP claims Fitness IQ's enforcement efforts were unnecessary because Fitness IQ could have relied on the sales summary originally provided and could have accepted TVP's response that it did not have information about potential infringers. (*Id.*) Additionally, TVP argues it never affirmatively represented that it had information to disclose concerning potential infringers. (*Id.*)

Finally, TVP contends this is not an exceptional case because TVP complied with the settlement agreement, by paying the agreed-upon settlement amount, submitting to the permanent injunction, submitting a sales summary, and informing Fitness IQ it did not have information regarding potential infringers. (*Id.*)

C.  **Fitness IQ's *Ex Parte* Application to Conduct Additional Discovery and for a Bond**

On April 25, 2012, Fitness IQ applied to the Court *ex parte* to request (1) an Order reopening discovery, (2) a bond to be filed by TVP for recovery of fees and costs, and (3) Order for TVP to show cause as to why it should not be held in contempt of court. (ECF No. 41.) Fitness IQ contends an *ex parte* application is necessary to prevent TVP from destroying evidence or transfer funds overseas while the post-settlement dispute is pending. (ECF No. 41.) In February 2012, Fitness IQ discovered TVP continued to sell the infringing product, thus ignoring the Court's preliminary and permanent injunction and judgment. (ECF No. 41 at 6.) Fitness IQ discovered TVP sold a number of units both while the preliminary injunction motion was pending and after the Court entered the preliminary injunction, but TVP never disclosed these sales to Fitness IQ or the Court. (ECF No. 41 at 6-7.) After conducting additional online research, Fitness IQ also found several online sellers still offering the infringing product, and sellers had bought units from TVP as recently as December 2011. (ECF No. 41 at 7.)

On May 1, 2012, the Court ordered TVP not to hide, sequester, destroy, or transfer any evidence regarding the infringing product, or take or cause any action designed to, or which may reasonably be anticipated to frustrate or impair the ability of the Court to fashion effective relief and/or enforce the permanent injunction and judgment. (ECF No. 44 at 1-2.) Additionally, the

1  Court ordered TVP to post a bond of $25,000 in case monetary sanctions or liability are found in
2  connection with the current disputes. (ECF No. 44 at 2.)
3       TVP filed a response in opposition to Plaintiff's *ex parte* application on May 21, 2012.
4  (ECF No. 51.) TVP contends any potential violation of the Court's preliminary or permanent
5  injunction was inadvertent. (ECF No. 51 at 2.) TVP claims sales of the infringing product were
6  minimal, thereby causing oversights on its part. (ECF No. 51 at 2.) TVP explains the sale
7  involving use of consignment invoices was not disclosed because TVP accounted for payment
8  upon sale and receipt of revenue by the distributor or its customers. (ECF No. 51 at 3.) TVP
9  attributes the omission of the sales data to distraction and confusion caused by the departure of
10 Nick Kurani, the TVP officer primarily responsible for this action and TVP's representative at the
11 ENE conference. (ECF No. 51 at 3.) TVP also observed that neither the preliminary nor
12 permanent injunction required TVP remove the infringing product from its distributors' or
13 customers' shelves, or to direct them to do so. (ECF No. 51 at 4.) Additionally, TVP notes the
14 preliminary injunction ordered Plaintiff to post a $100,000 bond as a condition of the injunction,
15 and Plaintiff did not do so. (ECF No. 51 at 4.) TVP contends there may be no recovery of
16 damages for the issuance of a temporary injunction because Plaintiff did not post the bond. (ECF
17 No. 51 at 4.)
18      In its Reply, Fitness IQ rejects TVP's contention that the undisclosed sales were
19 "inadvertent oversights." (ECF No. 57 at 1.) Fitness IQ argues that four separate instances of
20 materially violating a Court Order suggest a pattern of deliberate conduct. (ECF No. 57 at 1.)
21 Fitness IQ also questions TVP shifting blame to Fitness IQ for not posting the $100,000 bond for
22 the preliminary injunction. (ECF No. 57 at 1-2.) Fitness IQ argued this did not justify TVP's
23 conduct. (ECF No. 57 at 2.) Fitness IQ contended it did not post the bond because TVP swore it
24 was no longer selling the infringing products and the parties had begun what Fitness IQ believed to
25 be serious settlement negotiations. (ECF No. 57 at 1-2.) Fitness IQ noted TVP ignored more than
26 one Court Order. (ECF No. 57 at 2.) TVP also disregarded the Court's Order to produce all
27 documentation of sales, as well as the Court's permanent injunction. (ECF No. 57 at 2.) Fitness
28 IQ urged the Court to allow it to conduct additional discovery to verify TVP's current

representations. (ECF No . 57 at 2.)

**D.  Applicable Law**

    *1.  Attorneys' Fees under 35 U.S.C. § 285*

In patent cases, the court has discretion to award attorneys' fees to a prevailing party in exceptional cases. *See* 35 U.S.C. § 285. An award of attorneys' fees under this statute is broken into four parts: "(1) the case must be exceptional; (2) the district court may exercise its discretion; (3) the fees must be reasonable; and (4) the fees may be awarded only to the prevailing party." *Machinery Corp. Of Am. v. Gullfiber AB*, 774 F.2d 467, 470 (Fed. Cir. 1985). Additionally, the requesting party has the burden of establishing the exceptional nature of the case by clear and convincing evidence. *Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed. Cir. 1985).

In deciding whether to apply 35 U.S.C. § 285 to a request for fees, the court looks at "the rights at issue and whether they properly invoke the patent laws . . . It matters not whether those rights arise in a patent suit or in an action to enforce an agreement settling that litigation." *Interspiro USA, Inc. v. Figgie Intern, Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994). If the asserted rights involve nonpatent issues, 35 U.S.C. § 285 may still apply if the nonpatent issues are sufficiently "intertwined with the patent issues." *Id.* (quoting *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1564 (Fed. Cir. 1983). Nonpatent issues are intertwined with the patent issues when the "right to relief is necessarily dependent on resolution of a substantial question of federal patent law." *Id.* (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)); *see also Gjerlov v. Schuyler Laboratories, Inc.*, 131 F.3d 1016 (Fed. Cir. 1997) (concluding patient issues were intertwined with nonpatent issues because a finding of breach of the settlement agreement depended on a finding of patent infringement).

    *2.  Attorneys' Fees under 15 U.S.C. § 1117(a)*

In trademark cases, the court also has discretion to award attorneys' fees to a prevailing party in exceptional cases. *See* 15 U.S.C. § 1117(a). The statue does not define the term "exceptional." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008). However, the Ninth Circuit interprets the exceptional requirement narrowly. *Id.*; *Gracie v. Gracie,* 217 F.3d

1060, 1071 (9th Cir. 2000). Under this narrow interpretation, the Ninth Circuit limits attorneys' fees awards to "infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002).

A trademark case is exceptional "when the non-prevailing party's case is groundless, unreasonable, vexatious, or pursued in bad faith." *Classic Media, Inc.*, 532 F.3d at 990; *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir.2002). Additionally courts have limited recovery of attorneys' fees under this statute to fees incurred by the prevailing party for work related to the Lanham Act claim. *See City of Carlsbad v. Shah*, 2012 WL 424418 at 16 (S.D. Cal. 2012); *see also U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997); *Neva, Inc. v. Christian Duplications Int'l, Inc.*, 743 F.Supp. 1533, 1543 (M.D. Fla. 1990) ("only entitled to attorney fees for legal expenses incurred in prosecuting the claim arising under the Lanham Act.")

### 3. *Attorneys' Fees under California Law*

Under the American rule, the prevailing party ordinarily is not entitled to collect attorneys' fees. *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 448 (2007). However, a statute or contract allocating attorneys' fees can overcome this rule. *Id.* In California, attorneys' fees may be awarded if a contract provides for the award of attorneys' fees and an action is instituted to enforce the provisions of the contract. *See* Cal. Code Civ. P. § 102; *see also Iverson v. Spang Indus.*, 45 Cal.App.3d 303, 314 (1975).

### 4. *Attorneys' Fees under the Court's Inherent Equitable Power*

In the absence of contractual or statutory authority, a court may award attorney fees if it finds the losing party "*acted in bad faith, vexatiously, wantonly, or for oppressive reasons.*" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-47 (1991); *see also Beaudry Motor Co. v. ABKO Properties, Inc.*, 780 F.2d 751, 756 (9th Cir. 1986). "[F]ederal courts do not hesitate to exercise this inherent equitable power whenever 'overriding considerations indicate the need for such a recovery.'" *Hall v. Cole*, 412 U.S. 1, 5 (1973) (quoting *Mills v. Electric Auto-Lite*, 396 U.S. 375, 391-92 (1970)). The underlying rationale for this type of "fee shifting" is punitive and "can be imposed only in exceptional cases and for dominating reasons of justice." *Beaudry Motor Co.*, 780

F.2d at 756 (citations omitted); *see Hall*, 412 U.S. at 5 ("the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant'"). A claim that has some legal and factual support considered in the light of the reasonable beliefs of the individual making the claim is not made in bad faith. *See Beaudry Motor Co.*, 780 F.2d at 756.

### E. Analysis

#### 1. *Attorneys' Fees under 35 U.S.C. § 285*

Fitness IQ is seeking attorneys' fees for the actions it took to enforce the settlement agreement. The genesis of the dispute regards the proper interpretation of sections 3 and 5 of the settlement agreement. In section 3, TVP agreed to provide "documentation sufficient to show" total sales of the infringing products in the United States and Canada. (*See* TVP's Objection, Exhibit A.) In section 5, TVP agreed to provide Fitness IQ with a list identifying potential infringers. *Id.* At first, TVP provided a summary of invoices that included invoice numbers, prices, and quantities sold. (ECF No. 40-1 at 4.) TVP also contended it could not provide a list identifying potential infringers because it did not know of any potential infringers. The Court found TVP's documentation inadequate and ordered TVP to produce documentation to show total sales of the infringing products. (ECF No. 31). TVP then provided copies of actual invoices. (ECF No. 40-1 at 5.) These invoices listed the names and addresses of customers who purchased the infringing products from TVP, thus demonstrating TVP's misrepresentations to both Fitness IQ and the Court regarding its knowledge of potential infringers. In addition to this unreasonable conduct, Fitness IQ contends TVP's continued infringement of its patent provides even more support for its request for attorneys' fees.

Fitness IQ relies on *Schmidt v. Zazzara*, 544 F.2d 412 (9th Cir. 1976) and *Research Corp. v. Philter Assoc. Growers, Inc.*, 318 F.Supp. 1405 (N.D. Ill. 1970) to support its request for attorneys' fees under 35 U.S.C. § 285. In *Schmidt*, the defendant repudiated the settlement agreement and Plaintiff incurred attorneys' fees preparing for trial. *Schmidt*, 544 F.2d at 414. The circuit court upheld the district court's award of fees because defendant's repudiation of the settlement agreement involved bad faith and therefore elevated the case to exceptional status. *Id.* Additionally, the circuit court confirmed the district court's finding that plaintiff was the

1  "prevailing party within the spirit and intent of the statute" because plaintiff prevailed on her
2  motion to compel compliance with the agreement. *Id.* at 414-15.

3  In *Research Corp.*, the defendant collaterally attacked the consent agreement immediately
4  after representing to plaintiff that it would not do anything to undermine the settlement. *Research*
5  *Corp.*, 318 F.Supp. at 1405. Plaintiff incurred legal expenses attempting to enforce the consent
6  agreement. The court determined plaintiff's legal expenses were recoverable under 35 U.S.C. §
7  285 because defendant's bad faith made the case "exceptional." *Id.*

8  TVP contends plaintiff's reliance on 35 U.S.C. § 285 and 15 U.S.C. § 1117(a), and the
9  cases which apply those statutes, is misplaced. TVP characterizes the instant dispute as a mere
10 difference of interpretation of the settlement agreement and thus contractual in nature.
11 Accordingly, TVP contends the award of attorneys' fees under the statutes cited by plaintiff only
12 apply to patent and trade dress cases and are further limited to prevailing parties in exceptional
13 cases. TVP contends the settlement agreement ended the patent and trade dress suit, thus the only
14 remaining issue is one of contract interpretation. TVP concludes contract interpretation is governed
15 by state law, not federal patent or trade dress law.

16 TVP also distinguishes the instant case from *Schmidt*. TVP argues the *Schmidt* analysis
17 does not apply to the instant case because Fitness IQ incurred fees attempting to enforce the
18 settlement whereas the plaintiff in *Schmidt* incurred fees preparing for trial. TVP also distinguishes
19 their own conduct from the conduct of the defendants in *Schmidt*. TVP contends it reasonably
20 interpreted the settlement agreement whereas the defendant in *Schmidt* repudiated the settlement
21 agreement after its consummation. TVP concludes this is not an exceptional case nor is plaintiff
22 the prevailing party.

23 Furthermore, TVP contends it did not intentionally violate any of the Court's orders, and
24 any potential violation was inadvertent and not based on contempt, attributing nondisclosures to
25 the resignation of the primary officer responsible for the instant action and the use of consignment
26 invoices. (ECF No. 51 at 2-3.) TVP denies intentionally ignoring or violating the Court's
27 permanent injunction and contends it rejected inquiries for sale of the product, save one small
28 invoice which was inadvertently allowed to issue. (ECF No. 51 at 3-4.)

The Court finds unpersuasive TVP's threshold attempt to invalidate the application of 35 U.S.C. § 285 to the instant case by contending that the settlement agreement – *the agreement at issue* – resolved the patent and trade dress claims, thus rendering patent and trade dress law inapplicable and unrelated to the enforcement or application of the settlement agreement. Neither defendant nor plaintiff cited any case law on this threshold issue.

Nevertheless, the Court found case law which supports the proposition that in cases presenting patent and nonpatent *claims*, a party *cannot seek* attorneys' fees on the nonpatent claims under 35 U.S.C. § 285 unless the claims are "so intertwined with the patent issues" as to make 35 U.S.C. § 285 applicable to the entire dispute. *See Machinery Corp. Of Am.*, 774 F.2d at 933 (quoting *Stickle*, 716 F.2d at 1564). According to case law from the Court of Appeals of the Federal Circuit, the issues asserted by plaintiff (delayed payment, misrepresenting its knowledge of potential infringers, and failure to provide the required sales documentation) must be inextricably intertwined with patent and trade dress issues in order for the attorneys' fees provision of 35 U.S.C. § 285 to apply. *See Gjerlov,* 131 F.3d at 1024-25. This standard is met where breach of the settlement agreement necessarily includes infringement of the patent. *Id*. Conversely, a careful reading of *Schmidt*, a case decided by the Ninth Circuit before the creation of the Federal Circuit Court of Appeals, reveals a broader interpretation of the statute's applicability to settlement agreements in patent suits. *See Schmidt*, 544 F.2d at 414. Indeed, the *Schmidt* court stated:

> The consent judgment embodies an elaborate injunction against the defendants. If they should breach it, thus causing Schmidt to institute proceedings to enforce it, the defendants would be in no position to argue that the judgment would bar her claim for attorney's fees incurred in the enforcement proceeding. *Schmidt's motion to compel performance of the settlement agreement and entry of the judgment is analogous to such an enforcement proceeding.*

*Id.* (italics added).

Here, TVP's breach of the settlement agreement necessarily includes infringement of the patent, thus satisfying the Federal Circuit's standard for recovering attorneys' fees on nonpatent claims. The settlement agreement entered into on July 18, 2011 refers to TVP's products as "infringing products." (ECF No. 40-3 at 2.) The settlement agreement also states TVP agrees to submit to the proposed judgment and permanent injunction (ECF No. 40-3 at 3.) The proposed judgment and permanent injunction state TVP infringed Fitness IQ's patent by "making, using,

1  selling, offering to sell, and causing others to make, use, sell, or offer to sell the Infringing
2  Products . . . " and enjoined TVP from continuing to do so anywhere in the world. (ECF No. 40-6
3  at 10.) TVP's continued sale of the products after the settlement agreement and after the
4  permanent injunction entered on September 8, 2011 constitutes continued patent infringement. As
5  recently as December 2011, TVP sold approximately 12,000 units of the infringing product to an
6  online seller. (ECF No. 40 at 7.) At the time Fitness IQ filed its *ex parte* request, another online
7  seller's website showed that it was *still* offering the infringing product for sale. (ECF No. 40 at 7.)
8  TVP does not deny it continued to sell the infringing product, but claims instead that any breach of
9  the settlement agreement was inadvertent. (ECF No. 51 at 2.)

10 However, even assuming TVP's breach was inadvertent, TVP nonetheless infringed Fitness
11 IQ's patent by continuing to sell the infringing product. Considering TVP's unreasonable conduct
12 throughout settlement negotiations and in the post-settlement dispute, along with the clear
13 continued infringement of Fitness IQ's patent in violation of both the permanent injunction and the
14 settlement agreement, the Court finds the post-settlement issues asserted by Fitness IQ are "so
15 intertwined with patent issues" that the attorneys' fees provision of 35 U.S.C. § 285 applies. *See*
16 *Machinery Corp. Of Am.*, 774 F.2d at 933. For the same reasons, the Court find TVP acted in bad
17 faith in complying with the settlement agreement and permanent injunction. Therefore, TVP is
18 required to pay Fitness IQ's attorneys' fees for the time spent bringing this dispute before the
19 Court.

20         **2.**      *Attorneys' Fees under 15 U.S.C. § 1117(a)*

21 Pursuant to 15 U.S.C. § 1117(a), a district court has discretion to award a prevailing party
22 attorneys' fees when "the acts of infringement can be characterized as malicious, fraudulent,
23 deliberate, or willful." *Classic Media*, 532 F.3d at 990. Fitness IQ characterizes this case as an
24 exceptional trademark case because TVP acted in bad faith throughout settlement negotiations and
25 in the post-settlement dispute. (Fitness IQ's Reply at 2-4.)

26 The Court agrees with Fitness IQ's characterization of TVP's conduct as unreasonable and
27 pursued in bad faith. In order for the Court to award attorneys' fees under 15 U.S.C § 1117(a),
28 TVP's *infringement* must be malicious, fraudulent, deliberate or willful. *See Boney*, 127 F.3d at

825-26 (trademark case is exceptional when the *infringement* is malicious, fraudulent, deliberate, or willful). After considering the parties' briefs and exhibits in support thereof, the Court agrees with Fitness IQ that the nature of TVP's continued infringement after the settlement agreement and permanent injunction elevates this case to exceptional status as a deliberate and willful breach. The Court finds TVP's failure to timely pay, its misrepresentation of its knowledge of potential infringers, its failure to provide the required sales documentation, *in addition* to its continued infringement of Fitness IQ's patent, demonstrate TVP's pattern of engaging in deliberate and willful behavior. Despite TVP's argument that its actions were inadvertent, the Court cannot ignore that there are several instances in which TVP acted unreasonably and in bad faith. Accordingly, Fitness IQ's enforcement efforts warrant an award of attorneys' fees pursuant to 15. U.S.C. § 1117(a).

### 3. *Attorneys' Fees Under California Law*

Although Fitness IQ's enforcement of the settlement agreement may not necessarily involve patent and trademark issues, a request for an award of attorneys' fees can invoke state law for contract enforcement. *See Gjerlov*, 131 F.3d at 1025. Under California law, the court may award attorneys' fees for enforcement of a contract if the contract provides for the award of attorneys' fees and an action is instituted to enforce the provisions of the contract. *See* Cal. Code Civ. P. § 102. Here, the settlement agreement does not provide an award of attorney fees for enforcement of the settlement agreement. (*See* TVP's Objection, Exhibit A.) Therefore, under California law Fitness IQ is not entitled to attorneys' fees for its efforts to enforce the settlement agreement.

### 4. *Attorneys' Fees Under the Court's Inherent Equitable Power*

Alternatively, even if Fitness IQ is not entitled to attorneys' fees under contractual or statutory authority, the Court has inherent equitable power to award attorneys' fees in certain circumstances. *Int'l Union Petroleum & Indus. Workers v. Western Indus. Maint.*, 707 F.2d 425, 428 (9th Cir. 1983). A court may award attorneys' fees where one party demonstrates bad faith either in its actions leading to the lawsuit or its actions during the course of the lawsuit. Moreover, "[b]ad faith may be demonstrated by showing that a defendant's obstinacy in granting a plaintiff

his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation." *Huecker v. Milburn*, 538 F.2d 1241, 1245 n. 9 (6th Cir.1976). "The award of attorneys' fees in the latter context satisfies a dual purpose-deterrence and compensation. The threat of an award of attorneys' fees tends to deter frivolous dilatory tactics. The award also compensates a plaintiff "for the added expense of having to vindicate clearly established rights in court."" *Id.*

The Court finds TVP's conduct during settlement negotiations, its actions after the settlement and its posture during the post-settlement dispute were unreasonable. Specifically, the Court finds TVP acted unreasonably when it lead Fitness IQ to believe that no information existed regarding potential infringers. Further, TVP's post-settlement actions did not satisfy its obligations under the contract. TVP also took an unreasonable position when it refused to comply with its obligations under the settlement agreement and forced Fitness IQ to seek relief from this Court. Not only did TVP fail to provide Fitness IQ with any information regarding potential infringers, TVP also refused to provide Fitness IQ with an explanation of the process it took to determine if it had any information regarding potential infringers. Finally, TVP breached the settlement agreement and permanent injunction by continuing to sell the infringing products.

The Court also finds TVP misrepresented to Fitness IQ and the Court the extent of its knowledge regarding potential infringers. Indeed, the invoices the Court had to order TVP to produce contain information regarding potential infringers. (ECF No. 31). By implication this means TVP had information regarding potential infringers since September 13, 2011 when it provided Fitness IQ with the sales summary. A review of the invoices and sales summary reveals TVP would have needed the invoices to prepare the sales summary. Instead of turning the underlying documents over initially, TVP forced Fitness IQ to present this issue to the Court for resolution. TVP ultimately turned over the documents on November 18, 2011, which suggests TVP had these documents the entire time or did not encounter any difficulty locating these documents.

The Court also finds TVP breached both the July 18, 2011 settlement agreement and the September 8, 2011 permanent injunction by selling units of the infringing product as recently as December 11, 2011. Continued infringement of Fitness IQ's patent would certainly cause Fitness

IQ to resort to legal action in order to stop the infringement, and the Court has the inherent equitable power to award Fitness IQ attorneys' fees to compensate it for the added expenses of pursuing such legal action.

Accordingly, the Court finds TVP acted in bad faith. Therefore, TVP is required to pay Fitness IQ's attorneys' fees for the time spent bringing the dispute before the Court.

### 5. *Lodestar Figure*

To determine a reasonable attorneys' fee award or "lodestar" figure, the Court begins by calculating the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Supreme Court has repeatedly emphasized the district court has discretion to determine the amount of a fee award. *Hensley*, 461 U.S. at 437. When setting a fee award, the Court "must assess 'the reasonableness of the fee in light of the totality of the circumstances.'" *Green v. Baca*, 225 F.R.D. 612, 615 (C.D.Cal. 2005) (quoting *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 n. 7 (9th Cir.1987)).

a. Reasonable Rate

Fitness IQ contends the rates charged by counsel for Fitness IQ are reasonable, and are comparable to the rates charged by attorneys of similar skill and experience in the community. (Fitness IQ's Request at 6; Sybert Decl. ¶ 6.) In this case, Fitness IQ was represented by a senior partner and head of the Intellectual Property Practice Group, as well as an associate who primarily handles intellectual property matters. Fitness IQ's lead counsel represents that the billing rates in this case are comparable to the rates charged by other comparable counsel specializing in intellectual property matters. (Sybert Decl. ¶ 6.) Based on the totality of the circumstances, the Court finds Fitness IQ's billing rates reasonable. *See* Green, 225 F.R.D. at 615.

b. Reasonable Number of Hours

Fitness IQ contends the number of hours billed was also reasonable and represents only the time spent on work done in connection with the settlement enforcement. (Fitness IQ's Request at 6; Sybert Decl. ¶ 7.) Fitness IQ asserts the total time spent on settlement enforcement was reasonable because the dispute required extensive communication with opposing counsel to settle the disagreement before bringing the matter before the Court. (Sybert Decl. ¶ 7.)

Having reviewed the arguments and documentation submitted, the Court finds Fitness IQ should recover fees for bringing the dispute before the Court. As discussed above in Section 4, the Court finds TVP took an unreasonable position in the post-settlement dispute. Therefore, TVP's unreasonable position justifies an award of attorney fees for the time spent bringing this dispute before the Court.

c. Final Lodestar Amount

Based on the Court's findings above, the Court finds it reasonable to award Fitness IQ $10,002.05 in attorneys' fees and $117.05 in costs.

|  | Hourly Rate | Hours Billed | Hourly Rate x Hours Billed |
|---|---|---|---|
| Richard P. Sybert | $475.00 | 13.6 | $6,460.00 |
| Yuo-Fong Amato | $250.00 | 13.7 | $3,425.00 |
| Costs |  |  | $117.05 |
| **TOTAL** |  |  | $10,002.05 |

TVP is ordered to reimburse Fitness IQ in the amount of **$10,002.05 on or before October 5, 2012.**

### III. Confidentiality of Invoices

A.   **TVP's Request**

TVP requests the Court order the invoices produced by TVP on November 18, 2011 be maintained in confidence as follows:

> Information designated "CONFIDENTIAL," including particularly the invoices produced by TVP to Fitness IQ on November 18, 2011, must be viewed only by counsel of Fitness IQ and by officers or employees of Fitness IQ that need to know the information for the purpose of reviewing the invoice to confirm that the sales did not exceed 66,000 units, and such information shall be maintained in such confidence and shall be used for no other purpose. (TVP's Objection at 7.)

The Court ordered TVP to submit to plaintiff underlying documentation (un-redacted but on a confidential basis) to authenticate the total numbers of units sold. (ECF No. 31.) TVP provided Fitness IQ with copies of invoices and marked the invoices CONFIDENTIAL. TVP argues the purpose of section 3 of the settlement agreement is to confirm TVP's sales did not exceed 66,000 units, and therefore Fitness IQ should not be permitted to use the invoices for any other purpose. (TVP's Objection at 7-8.)

**B.      Fitness IQ's Objection**

Fitness IQ argues it is entitled to use the invoices beyond sales substantiation because the Court also order TVP to produce documentation regarding potential infringers. (Fitness IQ's Reply at 5-6.) According to Fitness IQ, the invoices TVP produced were produced not only to confirm sales but also to identify potential infringers for the purpose of monitoring them. (*Id.*) Additionally, Fitness IQ contends it is not required under sections 3 or 5 of the settlement agreement to keep the invoices confidential. (*Id.*)

**C.      Discussion**

On November 9, 2011, the Court ordered Defendant to "submit to plaintiff underlying documentation (un-redacted but on a confidential basis) to authenticate the total number of units sold." (ECF No. 31.) Plaintiff argues section 3 of the settlement agreement does not require confidentiality. Fitness IQ is correct, section 3 does not require confidentiality and there is no broad confidentiality clause encompassing the entire settlement agreement. (TVP's Objection, Exhibit A.) TVP is asking the Court to now add a confidentiality clause to the settlement agreement which was not part of the bargained for exchange. Additionally, section 3 does not limit Fitness IQ's use of the produced invoices to substantiation of sales. (*Id.*) Therefore, the Court DENIES TVP's request that the invoices it produced be treated as confidential and DENIES TVP's request that use of the invoices be limited to substantiation of sales under section 3 of the settlement agreement.

## IV. Reopening Discovery

Fitness IQ moves to reopen discovery in order to reveal additional damages to Fitness IQ not covered by the settlement agreement. (ECF No. 40, p. 5). TVP argues discovery is unnecessary because all the invoices for the infringing product have been disclosed. (ECF No. 53, p. 5). TVP is willing to provide a CPA certificate based on review of its accounts but Fitness IQ contends TVP's offer is insufficient. (ECF No. 57, p. 2).

Fitness IQ specifically requests the following limited discovery:

*Third-Party Discovery*

- Records of imports form foreign warehouse/manufacturers from U.S. Customs;

- Invoices for all sales from TVP customers.

*Discovery from TVP*

- Identification of all TVP office locations, computer/server locations, file storage locations and access to all these TVP office locations, computer/server locations, file storage locations such that FIQ experts and investigators may search and copy (a) physical and electronic sales records of infringing products, (b) documents sufficient to show the identity of all suppliers and manufacturers of the infringing products, and (c) documents sufficient to show all clients of the infringing products;
- Identification of all of TVP's suppliers/manufacturers of the infringing products and all documents constituting orders, invoices, receipts, and Customs records relating to the infringing products;
- Identification of all of TVP's sales of the infringing products and all documents constituting invoices relating to the infringing products;
- Identification of all of TVP's Customs brokers and all documents constituting Customs records relating to the infringing products.

"District courts have wide latitude in controlling discovery . . ." *California ex rel. California Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir.1998) (internal quotation and citations omitted). When a party seeks to reopen discovery or extend the discovery cutoff, the party essentially seeks to modify a scheduling order. Such requests require good cause. Fed.R.Civ.P. 16(b)(4); *see Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.2002). In determining whether good cause exists to reopen discovery, courts may consider a variety of factors. *See, e.g., United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir.1995) (listing as factors: imminence of trial, opposition to request, prejudice to non-moving party, diligence of moving party, foreseeability of need for discovery, and relevance of discovery sought).

Here, the Court entered final judgment and a permanent injunction, and specifically retained "jurisdiction over all disputes between and among the Parties arising out of the Settlement Agreement and Injunction, the Stipulation which includes the Injunction, and this final judgment,

including but not limited to interpretation and enforcement of the terms of the Settlement Agreement." (ECF No. 23, p 3). The Court did not dismiss the action. Thus, the Court does not need to reopen the underlying litigation.[2] In light of the Court's jurisdiction and arguments of counsel, the Court finds the factors identified in *Schumer* weigh in favor of reopening discovery. Indeed, trial is not imminent, plaintiff diligently moved to enforce its rights, the need for discovery was not foreseeable, and the discovery sought is relevant to enforce the terms of the agreement. Although defendant opposes reopening discovery, the Court does not find reopening discovery prejudices defendant.

Accordingly, the Court orders the parties to meet and confer on the limited amount of discovery the Court should allow. Then, the Court will hold a hearing on discovery on **October 5, 2012 at 9:30 a.m.** If the parties cannot agree on the discovery to be pursued, each side must submit its own proposal regarding discovery on or before **October 1, 2012**.

### V. Conclusion

For all the foregoing reasons Plaintiff's motion is **GRANTED** and Defendant's request regarding confidentiality is **DENIED**. TVP is hereby ordered to reimburse Fitness IQ in the amount of **$10,002.05 on or before October 5, 2012**. The Court finds Fitness IQ is entitled to attorneys' fees under 35 U.S.C. § 285 and 15 U.S.C. § 1117(a). Alternatively, even if these statutes were inapplicable, the Court would award attorneys' fees under its inherent equitable powers because the Court finds the circumstances presented here justify such an award. Furthermore, Plaintiff's motion to reopen limited discovery is **GRANTED**.

**IT IS SO ORDERED**.

DATED: September 14, 2012

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court

---

[2] Usually, "upon repudiation of a settlement agreement, the frustrated party may sue anew for breach of the agreement and may not . . . reopen the underlying litigation after dismissal." *Keeting v. Sheet Metal Workers Intern. Ass'n, Local Union*, 162, 937 F.2d 408, 410 (9th Cir.1991). Where there is evidence of "bad faith noncompliance," however, "[r]epudiation of a settlement agreement that terminated litigation pending before a court constitutes an extraordinary circumstance" that will "justif[y] vacating the court's prior dismissal order." *Id.* at 410–11.

- 17 -

10cv2584 WMc